Iowa National Mutual Insurance Company, appellant, v. Fidelity and Casualty Company of New York, appellee.

No. 51309.

(Reported in 128 N.W.2d 891)

JUNE 9, 1964.

Beecher, Buckmaster, Beecher & Lindeman, of Waterloo, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellee.

LARSON, J.—We are presented here with a controversy between two insurance companies. The action was brought by Iowa National Mutual Insurance Company which on May 27, 1957, had issued a policy to Russell Ward covering bodily injury, property damage and other risks, which specifically referred to a 1953 Plymouth Suburban automobile, against the Fidelity and Casualty Company of New York, which on March 27, 1957, had issued a like policy specifically referring to a Mercury automobile, to Mrs. Russell Ward who resided with her husband, Russell Ward. Later, by endorsement June 27, 1957, Mrs. Ward's policy was changed to specify a 1957 Buick automobile.

As a result of an accident on December 12, 1957, involving Russell Ward and his Plymouth, an injured passenger commenced action against Russell. Plaintiff investigated the acci-

dent and concluded it was obligated to pay substantial damages to the injured Robert Nelson. It so informed the defendant-company, which denied coverage and refused to participate in the settlement with Nelson. This action is to determine whether defendant's policy on Mrs. Ward's Buick covered the liability incurred in Mr. Ward's accident while driving his own Plymouth. The trial court found no defendant coverage, dismissed the cause with prejudice, and we have this appeal.

Two errors are assigned but, due to the view we take, only one need be considered here. Appellant contends the trial court erred as a matter of law in its interpretation of defendant's insurance policy by going beyond the plain and clear wording of the policy. We are not sure the court did find it necessary to go beyond the express intention of the parties as disclosed by the language used, but in considering the matter fully it did state in its conclusions of law that "the most that we can say for plaintiff's contention herein is that it has created an ambiguity." In order to resolve that question the court then discussed the testimony of the parties, including a proffered statement of Mr. Ward, and referred to other circumstances surrounding the transaction. Appellant in its brief and argument insists the policy is clear and unambiguous, and we must agree. Thus in our determination of the parties' intent, only the instrument itself and the circumstances surrounding its execution will be considered.

In construing any contract it is our duty to ascertain and give effect to the intention of the parties. An insurance policy is a contract. We should not so construe it as to give a meaning that either extends or restricts the coverage beyond that actually provided. The contract should be construed as a whole, and the clear and unambiguous language must be given its plain meaning. These rules are so well established in all jurisdictions that they need no citation of authority. What, then, is the clear and plain meaning of this contract or policy?

While the family automobile policy has been in use for a number of years, there are relatively few court decisions

construing the extent of its coverage and liability. See Nebraska Law Review, May 1958, Volume 37, No. 3, page 581. We must, therefore, carefully examine its terms and provisions to determine whether the policy issued to Mrs. Ward on her Buick was broad enough to include coverage of her husband's Plymouth automobile at the time it became involved in this accident. The policy name or purpose, of course, has little or no significance when we seek to determine the liability assumed by the covenants contained therein.

I. Appellant refers to the definitions in appellee's policy and contends coverage is found therein in "owned automobile" and "named insured". They provide: " 'named insured' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household"; and " 'owned automobile' means a private passenger or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile." Thus appellant argues the "owned automobile" in appellee's policy includes all cars owned by both Mr. and Mrs. Russell Ward on the effective date of the policy; that since Mr. Ward as her spouse qualifies as an insured, appellee became liable for the assumed obligation "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay * * *" because of bodily injury and property damage "arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * * *."

If we were to stop right here, it would indeed appear that the policy was intended to cover all automobiles owned by the party named in Item 1 of the declaration and her spouse, if he was a resident of her household. But this is not conclusive. It is not the entire contract. Courts must take a disputed contract by its four corners and determine its meaning from *all* the language used. Randolph v. Fireman's Fund Ins. Co., 255 Iowa 943, 945, 124 N.W.2d 528, 529, and citations. While it is true the definitions referred to in this family policy are broad enough to allow coverage for *all* cars owned by the parties and their spouses, and may well apply after the policy's effective date, these definitions alone do not constitute this whole

agreement. Here, as in the Randolph case, we find that there are other pertinent provisions, conditions and exclusions, other expressions, declarations and circumstances, which are as much a part of the policy as the coverage itself. Also see Mallinger v. State Farm Mutual Automobile Ins. Co., 253 Iowa 222, 229, 111 N.W.2d 647, 651; 12 Am. Jur., Contracts, section 256, pages 799, 800.

The policy in Item 3 of the declaration shows coverage is possible for six classifications of liability, and a space is provided to show the amount of coverage and the premium charged for each under columns headed "Car No. 1" and "Car No. 2" and "Total". This policy shows defendant was charged a premium for liability assumed only on "Car No. 1." No figures appear in the "Car No. 2" column. None appears in the "Total" column.

Next, in Item 4 it is stated: "The total number of private passenger and utility automobiles owned *on the effective date of this policy* by the named insured *does not exceed one,* unless otherwise stated herein:" followed by the typed-in words *"No exceptions"*. (Emphasis supplied.) The plain meaning of this statement is that only one automobile is to be covered by this policy as of that date, certainly not two or more, and it is difficult to see how it could be contended otherwise by either party. No reasonable person would expect one small premium as appears here was intended to cover all other cars owned by the insured, which term may include a spouse.

In Item 5 of the declarations we find the 1957 Buick listed as "Car No. 1" and no other automobile is listed. Since these restrictive designations are clearly spelled out, it must be concluded the coverage intended at that time did not exceed one automobile, and that was the Buick owned by the designated insured, Mrs. Russell Ward.

II. Appellant contends there was a waiver of the policy provisions disclosed in the declarations, for it appears the appellee's agent knew of Mr. Ward's automobile. It argues knowledge by the agent is knowledge by the principal and that somehow this knowledge changed the terms of the policy and its coverage. There is no merit to the contention. Waiver or

728

estoppel was not pleaded, and since we have concluded the policy as written expressed the true intention of the parties as to coverage, we fail to see how knowledge of the agent, or even of the principal, that other automobiles were owned by the insured would alter or extend this agreement. The fact that more than one car was owned by Mr. and Mrs. Ward would not prevent coverage of only one *if* such was their desire and the express intent of the parties.

It is clearly stated in Condition 16 of the policy that "By acceptance of this policy, the insured named in Item 1 of the declarations agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Since this policy was not intended to cover the car of the spouse, that intent must prevail over any greater coverage possible under the general definitions. There was no misrepresentation, and clearly neither party was misled nor deceived. As we understand it, the insured do not so claim. There is also no merit in appellant's contention that the court improperly considered a proffered statement of Mr. Ward that he never gave any thought to whether Mrs. Ward's policy also covered his automobile. The trial court was then considering what it believed was a plaintiff contention that the policy was not plain and considered such testimony as proper to resolve an ambiguity. Either way the court was satisfied Ward bought this policy to cover his wife's car, and another to cover his own car, indicating that he did not consider either policy covered the other automobile. We cannot say such consideration was error.

III. While we find no Iowa cases upon this family policy of insurance, the matter has been considered in several jurisdictions, among them Nebraska and Missouri. See Preferred Risk Mutual Ins. Co. v. Continental Ins. Co. (1961), 172 Neb. 179, 109 N.W.2d 126; Wise v. Strong (1960), Mo. App., 341 S.W. 2d 633, 640. Both of these decisions held under similar conditions that there was no coverage of a second automobile owned

by a "named insured" under the family automobile policy. In the Nebraska case the plaintiff-company, which had insured a Buick owned by one Sullenberger, claimed contribution of defendant-company, which had insured a Chevrolet Sullenberger bought for his grandson's use at school, when Sullenberger incurred liability due to a fatal accident with his Buick. There the court found the intention expressed in the contract was to insure only one automobile, and that was the Chevrolet, that the inserts, the restriction, and the designation therein, confined the coverage to the designated car owned by the named insured in the declaration.

In the Missouri case one Garver was the owner of a Nash automobile which was involved in an accident. Action was commenced against him for damages. He had acquired title to the Nash December 6, 1957. Later on December 12, 1957, he purchased a Hillman Minx car and obtained a policy of insurance from the Travelers Indemnity Company. The accident occurred on December 14, 1957. The sole question presented was: Was the Nash automobile insured under the family automobile policy issued to Garver? The same arguments were advanced there as in the case before us, and the provisions of the policy were examined with the same result, i.e., "that under the terms of the contract, considered as a whole, it was the intention of the parties that only the Hillman Minx car was to be covered." It was said therein: "Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense" and it was concluded that this contract contained no ambiguity in its terms.

We agree with the logic and conclusion of these respectable authorities and find them worthy precedents to follow. Also see Government Employees Ins. Co. v. Woods (1961), 59 Wash.2d 173, 367 P.2d 21.

IV. Two jurisdictions appear to have reached a contrary result, although they may be distinguishable. Appellant places considerable reliance on the Louisiana case of Indiana Lumbermens Mutual Ins. Co. v. Russell, 243 La. 189, 198, 142 So.2d 391, 394. Like the case at bar, plaintiff there, having issued a family

automobile policy to the defendant Russell, brought a suit to have judicially determined the extent of its coverage on a Pontiac automobile specifically mentioned in the insured's policy declarations. The policy did not mention a Ford belonging to his spouse who was a member of Russell's household, but it appeared defendant while operating this Ford was involved in an accident injuring third persons. The court discussed the definition of "owned automobile" and concluded that the wife was a "named insured" and her automobile was an "owned automobile" entitled to coverage under the husband's policy. Items 4 and 5 of the declarations, as well as Condition 17 (16 in the policy before us), were considered as bearing on the intent of the parties to the contract, but the court found, due to an agreed-to mandate by the Louisiana Insurance Rating Commission, which stated: "If all owned automobiles, as defined in this Supplement, *are not to be insured in this policy,* the appropriate indorsement *must be attached*" (emphasis supplied), the Ford was not deleted by indorsement and was therefore covered under the policy. This mandate was also discussed in the prior case of Lejeune v. State Farm Mutual Automobile Ins. Co. (La. App.), 107 So.2d 509.

Of course we have no such mandate or requirement in Iowa and must consider the contract under its own terms and conditions. Even in the Russell case we note a strong dissent by one justice. He felt the intent of the parties was clearly disclosed by the terms of the policy itself, and pointed out that only one car was insured—the Pontiac—as it was declared to be the only car owned by the insured, and that premiums were paid on only one car, not two.

The case of American Universal Ins. Co. v. Costello (R. I. 1962), 185 A.2d 447, also cited by appellant, is not in point. There it was held that an automobile acquired by the spouse of the person named in the policy declaration *after* its effective date was covered. We are not faced with that problem here, although it would seem our policy provides for such additions if duly reported to the company for rate adjustments. Condition 2 states: "If the named insured [which may include the spouse] disposes of, acquires or replaces a private passenger or utility

automobile \* \* \* he shall inform the company during the policy period of such change. Premium shall be adjusted as of the date of such change, in accordance with the manuals in use by the company. \* \* \*."

V. Considering the well-established rules of construction heretofore referred to, and the express provisions, expressions and declarations of the parties, we are satisfied the trial court's conclusion that the policy was intended to cover only the Buick automobile when it was issued, was correct. There can be no doubt the instrument purports to insure on the effective date of the policy only the automobile or automobiles listed by the named insured, and that such is the plainly expressed intent of the parties. If Mrs. Ward had desired or intended to include her spouse's Plymouth in the coverage of her policy, she would have disclosed the ownership in Item 5 by naming the Plymouth, in Item 3 by paying a premium for "Car No. 2", and in Item 4 by listing the exception.

In this jurisdiction no endorsement is necessary to delete party-owned automobiles on such a policy's effective date, and we hold only those automobiles which were plainly listed by the parties are included in this *initial* coverage. We decide no more.

VI. In view of our conclusions above, we find it unnecessary to consider issues of subrogation, unauthorized settlement, and pro rata contributions. The trial court's judgment of dismissal must be affirmed.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.