151 So.2d 679 (1963)
Byron BEASLEY, Appellant,
v.
Rudolph WOLF and Robert Charles Wolf, Defendants, and
Keystone Insurance Co., Appellee-Garnishee.
No. 62-313.
District Court of Appeal of Florida. Third District.
April 2, 1963.
Rehearing Denied April 23, 1963.
Alfred D. Bieley and Helen Tanos Hope, Miami, for appellant.
Blackwell, Walker & Gray and James E. Tribble, for appellee-garnishee.
Stephen F. Bazzano, Miami, for defendants.
Before PEARSON, TILLMAN, C.J., and HORTON and HENDRY, JJ.
PEARSON, TILLMAN, Chief Judge.
This is an appeal from a summary final judgment in a garnishment proceeding. The appellant is the plaintiff. The appellee, Keystone Insurance Company, is the garnishee. In a wrongful death action growing out of an automobile collision, the appellant recovered a judgment against both Robert Wolf, the driver of the car involved, and Rudolph Wolf, the father of the driver and the owner of the car. The garnishment proceeding was upon this judgment.
After final judgment plaintiff filed a garnishment affidavit, and a garnishment writ was issued against the insurance company. The company answered and denied the debt. The plaintiff filed a traverse to the answer asserting that the father was covered by a liability insurance policy written by the garnishee, Keystone Insurance Company.
*680 After discovery proceedings, a summary judgment was entered in favor of the garnishee, insurance company. The garnishee thereafter moved for assessment of attorney's fees as costs under § 77.28, Fla. Stat., F.S.A., and attached an affidavit of an attorney stating that $600 was a reasonable fee for the services rendered to it. The trial court entered its order taxing costs of $250 against the plaintiff, appellant here.
The pivotal question is whether or not Rudolph Wolf, the father, was covered by a policy of insurance as to the automobile which his son, Robert, was driving at the time of the collision.
It appears from the record that Robert had been living in Florida for about a year prior to the accident and had taken a job here. In order to purchase an automobile in Miami, Robert's father was required to take the title in his name. The father agreed to do so, but neglected to add the automobile to the "Family Automobile Policy" which was at that time in effect with the appellee-insurance company.
We proceed with an examination of the policy concerned, keeping in mind the general rule (firmly established in Florida) that where the terms of an insurance policy are ambiguous, equivocal, or uncertain to the extent that the intention of the parties is not clear and cannot clearly be ascertained by the application of ordinary rules of construction, they are to be construed strictly and most strongly against the insurer and liberally in favor of the insured, so as to effect the dominant purpose of payment to the insured. Boston Ins. Co. v. Smith, Fla.App. 1963, 149 So.2d 68, and cases cited therein.
The appellant maintains that summary judgment should have been rendered against the garnishee based on the following provisions of the policy issued by the insurance company:
"The following are insureds under Part I:
"(a) With respect to the owned automobile,
"(1) the named insured and any resident of the same household,
"(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;
"(b) With respect to a non-owned automobile,
"(1) the named insured,
"(2) any relative, but only with respect to a private passenger automobile or trailer,
provided the actual use thereof is with the permission of the owner;" [Emphasis supplied]
In determining whether there is a genuine issue of material fact, the first question to be decided is whether the automobile driven by Robert Wolf at the time of the accident falls into the category of an "owned" or "non-owned" vehicle. It is to be noted that in order for coverage to exist in this case if the vehicle is determined to be "owned", it would not be necessary for Robert Wolf to have been a resident of the father's household, since any other person driving with the permission of the named insured is included in this section.
The appellee urges that the automobile driven by the son was not an "owned automobile," even though title was in the father, because it was not listed on the policy of insurance. The declarations section attached to the policy listed a 1955 Volkswagen and a 1955 Ford under the heading "Description of Vehicles." In addition, appellee maintains that the auto involved in the accident was never covered by it as an owned automobile since the required notice of the acquisition of such automobile was never given to the company in accordance with the terms of the policy.
We herewith determine that the automobile driven by Robert Wolf at the time of the accident with which we are dealing was an "owned" automobile within the *681 meaning of the policy of insurance issued by the garnishee. The appellee-garnishee first argues that the automobile in question did not qualify as an "owned" automobile because it was not listed under the declarations section of the policy. We find the better view to be that an automobile need not in all cases be listed on the face of a policy in order for insurance coverage to extend to such vehicle.
The policy involved in Indiana Lumbermen's Mut. Ins. Co. v. Russell, 243 La. 189, 142 So.2d 391 (1962), contains identical wording in most pertinent respects with that involved in the instant case. The Louisiana case also had as its primary question whether coverage extended to an automobile owned by the named insured (actually his wife), but not included in the declarations section of the policy. After first setting forth that the policy there involved extended liability coverage arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile (as does the policy in the instant case), and further that the policy defined "owned" automobile as one owned by the named insured (as does the policy in the instant case), the court answered counsel's contentions as to lack of coverage as follows:
"The flaw in counsel's contention, we think, is that it would require that we amend the coverage clause of the contract to conform with the representations or declarations of the insured so as to supply the true intent of the parties. But, in the absence of fraud, we are not permitted to give this relief. For the insuring clause, being free from any ambiguity, is the law between the parties and must be enforced as written. The fact that the declaration of the insured is in conflict with the coverage clause does not, of itself, lessen the coverage given under the policy or justify modification by the Court." [Emphasis supplied]
See Imperial Cas. & Idem. Co. v. Relder, 308 F.2d 761 (8th Cir., 1962). We are impressed with the reasoning of these courts. If an insurance contract provision is capable of two meanings, the one favorable to the insured must be adopted.
Appellee cites two cases as support for the proposition that in order to be considered an "owned" automobile, the vehicle must be listed on the face of the policy. One of these cases involved a situation where, although owning two automobiles at the time the policy was acquired, the insured listed only one and later attempted to be covered for an accident occurring in the unlisted automobile. Wise v. Strong, 341 S.W.2d 633 (C.A.Mo. App. 1960). The other was factually similar in that the insured already having a car covered under the terms of one company's policy, purchased a second car, insured with another company and subsequently attempted to hold the second company liable for damages involving the first automobile. Preferred Risk Mut. Ins. Co. v. Continental Ins. Co., 172 Neb. 179, 109 N.W.2d 126 (1961). We find that the facts in these two cases gave rise to the holdings reached therein, and those holdings cannot be used in the instant situation to sustain appellee's position.
As to the failure of Rudolph Wolf to comply with that condition of the policy requiring the named insured to inform the company within thirty days of acquiring an additional automobile, we hold that under the facts of this case such failure does not eliminate liability for an accident involving a car owned by the named insured but not listed on the face of the policy. It is to be noted that this condition is titled "Premium" and the sentence following the thirty-day notice requirement has to do with necessary premium adjustment. Thus, at the very least, it is a requirement which has an ambiguous function; and under the rule stated before, such ambiguity must be resolved in favor of the insured.
Having determined that the 1956 Ford was an "owned" automobile under the terms of the policy issued by appellee to the insured Rudolph Wolf, it follows that the *682 trial judge erred in granting a summary judgment for the garnishee-insurance company. This is so because under the terms of the policy, Robert Wolf, driving this car with the permission of his father, was an insured under section "(a) (2)" of the definition of persons insured; and the insurer became liable for damage and personal injury caused by this insured.
Appellant's second point directed to the attorney's fee is well taken. His timely objection to the use of an affidavit to establish the amount of the fee should have been sustained. The affidavit was submitted after the summary judgment was entered and the amount was taxed as an item of costs expended. This procedure is not permissible under § 77.28[1] when a timely objection is made. The reasonable amount of the attorney's fee to be allowed must be determined upon hearing and opportunity to present evidence, examine and cross-examine witnesses, as on any other controverted issue. Compare Johnson v. Sun Gold Septic Tank Co., Fla. 1962, 139 So.2d 878. The cost judgment for the garnishee is therefore reversed.
Since this cause is to be remanded, we have examined appellant's remaining point that default should have been entered because the garnishee's answer was improperly signed, and find it to be without merit.
Reversed and remanded.
NOTES
[1] Section 77.28, Fla. Stat., F.S.A.

"77.28 Garnishment; attorney's fees, costs, expenses, etc.; deposit required.  Before the issuance of any writ of garnishment in any cause by any court of this state, the party applying for such writ shall deposit into the registry of such court the sum of ten dollars, which, at any time after the service of such writ, shall be paid to the garnishee upon his demand, by the clerk of said court, for the payment, or part payment by such garnishee of the attorney's fee, which he may expend or agree to expend, in obtaining legal services for representation in said cause in response to such writ. Upon the rendering of a final judgment in any such proceeding in which a writ of garnishment shall be issued, the court shall determine a sum that should be awarded to the garnishee for his costs and expenses in said cause, including a reasonable attorney's fee, and such amount shall be taxed in said cause in the same manner that other court costs are taxed, and shall be paid accordingly. The plaintiff in such an action may recover in such manner the said sum advanced by him and paid into the registry of the court, and if the amount so allowed by the court is greater than the amount of such deposit, then judgment for the garnishee shall be entered against the party against whom such costs shall be taxed, for the amount of such deficiency."